UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ENARGY POWER (SHENZHEN) CO. LTD.,   )
ENARGY CORPORATION, JACKY CHEN,     )
and ZOOMKOH MANAGEMENT LLC,         )
                                    )
                Plaintiffs,         )
                                    )
v.                                  )   Civil Action No. 13-11348-DJC
                                    )
XIAOLONG WANG and CECEI CHEN,       )
                                    )
                Defendants.         )
_____ )

**ORDER ON DEFENDANTS' MOTION TO QUASH THE SUBPOENAS
DUCES TECUM DIRECTED TO THIRD PARTY BANK OF AMERICA, N.A.**
[Docket No. 38]

May 16, 2014

Boal, M.J.

Defendants Xiaolong Wang ("Wang") and Cecei Chen ("C. Chen") (collectively, "Defendants") have filed a motion to quash three subpoenas served by Plaintiffs Enargy Power (Shenzhen) Co. Ltd. ("Enargy"), Enargy Corporation, Jacky Chen, and Zoomkoh Management LLC (collectively, "Plaintiffs") on non-party Bank of America, N.A. ("Bank of America"). Docket No. 38. For the following reasons, the Court grants in part and denies in part Defendants' motion.[1]

---

[1] On April 8, 2014, the District Court referred Defendants' motion to this Court for a decision. Docket No. 43.

I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

From February 2008 to August 2011, Wang worked for Enargy as the director of Enargy's research and development department.  Docket No. 8-1 ¶ 6.  Wang and Enargy agreed on an annual salary of $200,000 and a five-year term of employment.  Id. ¶ 29.  In February 2008, Enargy advanced $800,000 (four years' salary) to Wang with the understanding that if Wang did not complete the entire four years, he would return the pro-rata portion of the advance that he had not yet earned.  Id. ¶¶ 30-32.

While with Enargy, Wang led the design and development of a "unique and customized high density DC/DC [power] converter [(the "PH Project")] to be used in specialized aircraft."  Docket No. 8-1 ¶ 7.  Wang worked on the PH Project as well as a similar project called the "Five Series Project."  Id. ¶ 11.  Together, Enargy and Wang developed a number of trade secrets including "the electric circuit layout, design drawings, bill of material, printing circuit board, software code, structure, experiment data, and testing data."  Id. ¶ 8.  The parties dispute whether the trade secrets were intended to be the sole property of Enargy or Wang or jointly owned.  Id. ¶¶ 8-9; Docket No. 17-1 ¶ 38.

Over time, the relationship between Enargy and Wang deteriorated.  Docket No. 17-1 ¶¶ 30-39.  Wang stopped working for Enargy in or about August 2011.  Docket No. 8-1 ¶ 33.  Plaintiffs allege that, prior to his departure, Wang, from his home in Canton, Massachusetts, instructed other Enargy employees to transmit the PH Project and Five Series Project files to him.  See AC ¶¶ 48-52, 62.  Plaintiffs further allege that Wang has since transferred those trade

---

[2] The facts are drawn from Plaintiffs' second amended complaint ("AC _") (Docket No. 36), the District Court's preliminary injunction order (Docket No. 24), and the parties' pleadings regarding Plaintiffs' motion for a preliminary injunction (Docket Nos. 8-1, 8-9, 8-11, 8-16, 17-1).

secrets to Enargy's distributor-turned-competitor Sichuan Chengye, with whom Wang is currently employed. See id. ¶¶ 56, 58, 64.

Wang's wife, C. Chen, worked as treasurer for Enargy's Massachusetts corporation. Plaintiffs allege that C. Chen wrongfully removed $330,000 from the corporate bank account. See AC ¶¶ 27, 33; Docket 8-1 ¶¶ 19-20; Docket Nos. 8-9, 8-11, 8-16.

On June 5, 2013, Plaintiffs filed a complaint against Wang and C. Chen, Docket No. 1, which was subsequently amended twice. Docket Nos. 6, 36. In their second amended complaint, Plaintiffs bring claims alleging, inter alia, violation of the Computer Fraud and Abuse Act ("CFAA"), conversion, misappropriation of trade secrets, and breach of fiduciary duty. Docket No. 36.[3] On February 24, 2014, Plaintiffs served three subpoenas on Bank of America. Docket No. 38 at 1, Exs. A-C. In two of those subpoenas, Plaintiffs seek documents regarding Wang's and C. Chen's personal banking records at Bank of America. Docket No. 38, Exs. A-B. In the third subpoena, Plaintiffs seek similar documents pertaining to Singfo Villa Management, LLC ("Singfo Villa"), an entity formed and managed by C. Chen. Docket No. 38, Ex. C; Docket No. 47 at 4.

On March 20, 2014, Defendants filed the present motion to quash those subpoenas. Docket No. 38. Plaintiffs opposed the motion on April 3, 2014, Docket No. 42, and Plaintiffs filed a reply brief on April 10, 2014. Docket No. 47. The Court heard oral argument on May 7, 2014.

---

[3] In the meantime, on December 3, 2013, the District Court entered a preliminary injunction in favor of Plaintiffs on their claims under the CFAA and based on conversion. Docket No. 24. The District Court ordered, inter alia, that the Defendants cease the use of any bank account registered in the name of Enargy Corporation. Docket No. 24 at 20.

II.     STANDARD OF REVIEW

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Rule 26(b)(1) generally permits liberal discovery of relevant information. Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990). As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

There are limits, however, on the scope of discovery. A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues. See Fed. R. Civ. P. 26(b)(2)(C).

A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1). Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260, 2009 WL 700142, *2 (W.D. Pa. Mar. 17, 2009) (citation omitted). Thus, the information sought must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) either admissible or reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The party issuing the subpoena has the burden of establishing that the requested information is relevant to its claims or defenses. Jee Family Holdings, LLC v. San Jorge Children's Healthcare, Inc., 297 F.R.D. 19, 20 (D.P.R. 2014).

III.    ANALYSIS

The subpoenas pertaining to Wang and C. Chen seek all documents and communications, from January 1, 2007 to the present, regarding any (1) bank accounts; (2) loans or mortgages; (3) wire transfers; (4) customer correspondence files; and (5) suspicious activity reports. See Docket No. 38, Exs. A-B. The subpoena pertaining to Singfo Villa seeks documents substantially similar to those sought in items 1, 3, 4, and 5, above, from January 1, 2008 to the present. Id., Ex. C.[4]

Plaintiffs maintain that the subpoenaed bank records are relevant because they may lead to evidence of Defendants' connections to Sichuan Chengye and/or other entities to whom Defendants allegedly sold misappropriated trade secrets, including any monies received in

---

[4] Plaintiffs correctly do not dispute that Defendants have standing to bring the present motion to quash these subpoenas. A party has standing to quash a subpoena served on a non-party if he or she has a personal right or privilege with respect to the requested information. Sterling Merch., Inc. v. Nestle, S.A., 470 F. Supp. 2d 77, 81 (D.P.R. 2006); Reliastar Life Ins., Co. v. Warrior, No. 06-2486CM-DJW, 2007 WL 2669558, at *4 (D. Kan. Sept. 7, 2007). Bank customers have a personal right with respect to their bank account records. See Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003); Schmulovich v. 1161 Rt. 9 LLC, No. 07-597(FLW), 2008 WL 4572537, at *4 (D.N.J. Oct. 14, 2008).

exchange for those trade secrets.[5] Docket No. 42-1 at 6. With respect to Singfo Villa's accounts, Plaintiffs further contend that Defendants used the accounts to receive Wang's $800,000 salary advance. Id. at 5. By way of the subpoenas, Plaintiffs seek to track Defendants' allegedly ill-gotten gains in order to substantiate their claims and/or demonstrate damages. See id. at 3-4.[6]

Nevertheless, the requests are overly broad based on the record before this Court at this time. First, Plaintiffs have not met their burden with respect to records about Singfo Villa. Plaintiffs only speculate that there is a "very strong possibility" that Defendants used Singfo Villa's accounts to receive and convert Wang's advance. Id. at 5. However, there is no record evidence to support these allegations. Plaintiffs only offer a strained reading of an affidavit from Enargy's general counsel, in which he states that Wang told him that "Singfo Villa Ltd," a different entity than the one named in the subpoena, was incorporated as a British Island entity and a bank account was opened in Hong Kong for the purpose of receiving Wang's $800,000 compensation. Docket 42-4 ¶ 2. Wang maintains that he received the $800,000 in a Hong Kong

---

[5] Plaintiffs also argue that Defendants' motion is untimely. Docket No. 42-1 at 5. A motion to quash must be "timely" filed. Fed. R. Civ. P. 45(d)(3)(A). Although Rule 45 does not explicitly define "timely," a motion to quash is generally considered timely if it is brought before the time within which compliance is ordered. See In re Subpoena For Rule 2004 Examination to the Wauregan Co., Inc., No. 10-mc-00005-JL, 2010 WL 678935, at *1 (D.N.H. Feb. 22, 2010); City of St. Petersburg v. Total Containment, Inc., No. 06-20953-CIV-LENARD, 2008 WL 1995298, *2 (E.D. Pa. May 5, 2008); Estate of Ungar v. Palestinian Authority, 451 F. Supp. 2d 607, 610 (S.D.N.Y. 2006). Here, each of the three subpoenas sought document production on or before March 24, 2014. Docket No. 38, Exs. A-C. Because Defendants filed the present motion to quash on March 20, 2014, Docket No. 38, their motion is timely.

[6] In its preliminary injunction order, the District Court found, for purposes of that decision, that there was a likelihood of success on only the claims under the CFAA and based on conversion. See Docket No. 24. Defendants have argued erroneously that Plaintiffs are not entitled to the subpoenaed bank records to support any other claims. See Docket No. 38 at 4. However, the other claims have not been dismissed and Plaintiffs are entitled to seek discovery in support of those claims.

bank account registered in his own name. Docket No. 17-1 ¶ 17. Accordingly, without any factual support for Plaintiffs' contentions, there is no basis to find that Singfo Villa's bank records are relevant to the claims or defenses in this action. The Court therefore quashes the subpoena regarding Singfo Villa.[7]

Second, Plaintiffs have not met their burden to show that C. Chen's bank records are relevant. At oral argument, Plaintiffs conceded that they did not need these records to support their conversion claims against C. Chen, as they could trace any monies converted from the Enargy Corporation account by examining the records of that account. Moreover, C. Chen's personal bank records have limited relevance, if any, to Plaintiffs' misappropriation claim. Although Plaintiffs believe that Wang and C. Chen may have comingled any funds received from the alleged sale of the trade secrets, they have not presented the Court with any evidence for their belief. Accordingly, the Court quashes the subpoena for C. Chen's bank records.

Third, the Court finds that the subpoena for Wang's bank records seeks some relevant discovery, but is overbroad. Plaintiffs argue persuasively that they are entitled to discover whether Wang sold the PH Project and Five Series Project trade secrets and, if so, how much he received in exchange for those trade secrets. Documents relating to Wang's bank account statements, wire transfer activities, and customer correspondence files may lead to the discovery of admissible evidence on these matters. Plaintiffs, however, are not entitled to each and every document identifying Wang's sources of income. Wang's loan and mortgage documents, for

---

[7] Plaintiffs are entitled to seek the identity of the account into which Wang deposited the $800,000. Nevertheless, a more targeted approach – for example, a single interrogatory question – would be appropriate. Accordingly, to the extent Plaintiffs wish to seek this information through an interrogatory and to the extent they have used up their allotment of interrogatory questions, they will be permitted to ask a single interrogatory on this issue.

example, are too attenuated to the facts and claims in this case to justify their production. The request for suspicious activity reports is even further beyond the scope of this litigation.

The Court also finds the time period referenced in the subpoena – 2007 to the present – to be overbroad. Wang did not begin working at Enargy until 2008. The Court therefore limits the subpoena request to the time period between January 1, 2008 and the present.

Accordingly, the Court declines to quash the subpoena for Wang's bank records, but limits its scope.

IV.   ORDER

For the foregoing reasons, Defendants' motion is granted in part and denied in part as follows:

1. The subpoenas pertaining to Singfo Villa and C. Chen are quashed in their entirety; and

2. The subpoena pertaining to Wang shall be limited to items 1, 3, and 4 for the time period between January 1, 2008 and the present.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE