UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ENARGY POWER (SHENZHEN)             )
CO. LTD., et al.,                   )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )     Civil Action No. 13-11348-DJC
                                    )
XIAOLONG WANG, et al.,              )
                                    )
            Defendants.             )
_____)

ORDER ON PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' RESPONSES TO
DOCUMENT REQUESTS AND PRODUCTION OF ALL DOCUMENTS THEREOF
[Docket No. 54]

September 17, 2014

Boal, M.J.

Plaintiffs Enargy Power (Shenzhen) Co., Ltd., Enargy Corporation, Jacky Chen, and Zoomkoh Management LLC (collectively, the "Plaintiffs") have moved for an order compelling defendants Xialong Wang and Cecein Chen (collectively, the "Defendants") to (1) remove the qualifying language ". . . relating to, referring to or concerning the subject matter of Plaintiffs' complaint"[1] from certain responses to requests for production; (2) identify which documents are responsive to which requests and if they have no responsive documents to a particular request, state so; and (3) complete their production of documents. Docket Nos. 54, 55.[2] For the

---

[1] See, e.g., Docket No. 55-3 at 4.

[2] The District Court referred the motion to the undersigned on July 22, 2014. Docket No. 62.

-1-

following reasons, this Court grants in part and denies in part the motion.

I.     FACTUAL AND PROCEDURAL BACKGROUND[3]

From February 2008 to August 2011, Wang worked for Enargy as the director of Enargy's research and development department. Docket No. 8-1 ¶ 6. Wang and Enargy agreed on an annual salary of $200,000 and a five-year term of employment. Id. ¶ 29. In February 2008, Enargy advanced $800,000 (four years' salary) to Wang with the understanding that if Wang did not complete the entire four years, he would return the pro-rata portion of the advance that he had not yet earned. Id. ¶¶ 30-32.

While with Enargy, Wang led the design and development of a "unique and customized high density DC/DC [power] converter [(the "PH Project")] to be used in specialized aircraft." Docket No. 8-1 ¶ 7. Wang worked on the PH Project as well as a similar project called the "Five Series Project." Id. ¶ 11. Together, Enargy and Wang developed a number of trade secrets including "the electric circuit layout, design drawings, bill of material, printing circuit board, software code, structure, experiment data, and testing data." Id. ¶ 8. The parties dispute whether the trade secrets were intended to be the sole property of Enargy or Wang or jointly owned. Id. ¶¶ 8-9; Docket No. 17-1 ¶ 38.

Over time, the relationship between Enargy and Wang deteriorated. Docket No. 17-1 ¶¶ 30-39. Wang stopped working for Enargy in or about August 2011. Docket No. 8-1 ¶ 33. Plaintiffs allege that, prior to his departure, Wang, from his home in Canton, Massachusetts,

---

[3] The facts are drawn from Plaintiffs' second amended complaint ("AC _") (Docket No. 36), the District Court's preliminary injunction order (Docket No. 24), and the parties' pleadings regarding Plaintiffs' motion for a preliminary injunction (Docket Nos. 8-1, 8-9, 8-11, 8-16, 17-1).

instructed other Enargy employees to transmit the PH Project and Five Series Project files to him.  See AC ¶¶ 48-52, 62.  Plaintiffs further allege that Wang has since transferred those trade secrets to Enargy's distributor-turned-competitor Sichuan Chengye, with whom Wang is currently employed.  See id. ¶¶ 56, 58, 64.

Wang's wife, C. Chen, worked as treasurer for Enargy's Massachusetts corporation.  Plaintiffs allege that C. Chen wrongfully removed $330,000 from the corporate bank account.  See AC ¶¶ 27, 33; Docket 8-1 ¶¶ 19-20; Docket Nos. 8-9, 8-11, 8-16.

On June 5, 2013, Plaintiffs filed a complaint against Wang and C. Chen, Docket No. 1, which was subsequently amended twice.  Docket Nos. 6, 36.  In their second amended complaint, Plaintiffs bring claims alleging, inter alia, violation of the Computer Fraud and Abuse Act ("CFAA"), conversion, misappropriation of trade secrets, and breach of fiduciary duty.  Docket No. 36.[4]

On May 2, 2014, the Defendants served responses to Plaintiffs' First Set of Requests for Production of Documents.  Docket Nos. 55-3, 55-4.  Plaintiffs filed the instant motion to compel on July 9, 2014.  Docket No. 54.  Defendants filed an opposition on July 21, 2014.  Docket No. 61.  The Court heard oral argument on September 16, 2014.

II.  ANALYSIS

    A.  Standard Of Review

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of

---

[4] In the meantime, on December 3, 2013, the District Court entered a preliminary injunction in favor of Plaintiffs on their claims under the CFAA and based on conversion. Docket No. 24.  The District Court ordered, inter alia, that the Defendants cease the use of any bank account registered in the name of Enargy Corporation.  Docket No. 24 at 20.

information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Rule 26(b)(1) generally permits liberal discovery of relevant information. Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D. Mass. 1990). As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issues," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

There are limits, however, on the scope of discovery. A court must limit discovery if it determines that the discovery sought is (1) unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the projected discovery in resolving the issues. See Fed. R. Civ. P. 26(b)(2)(C).

B. <u>Qualifying Language</u>

In response to certain requests for production of documents, Defendants objected on the grounds that the requests were overly broad and unduly burdensome but agreed to produce responsive documents "relating to, referring to or concerning the subject matter of Plaintiffs' Complaint." For example:

<u>Document Request No. 1 to Wang</u>

Produce any and all COMMUNICATIONS, including, but not limited to, texts, e-mails, memorandum (sic), letters, between YOU and J. Chen from January 1, 2004 to the present.

<u>Wang's Response</u>

Mr. Wang objects to this Request on the grounds that it is overly broad and unduly burdensome. Subject to and without waiving this objection and his General Objections, Mr. Wang will produce non-privileged documents responsive to this Request, if any, in his possession, custody or control for the time period January 1, 2004 through the date of Plaintiffs' Complaint relating to, referring to or concerning the subject matter of Plaintiffs' Complaint.

Docket No. 55-3 at 3-4.

Plaintiffs argue that such qualifying language is inappropriate because the Defendants may not unilaterally choose what documents they think are appropriate to produce. Docket No. 55 at 3. Plaintiffs are generally correct that Defendants must produce all documents responsive to non-objectionable requests. <u>See</u> Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."). However, many of the Plaintiffs' requests are overly broad and, therefore, objectionable. For example, several of the requests call for all communications between certain individuals without any restriction as to the subject matter of such communications. <u>See</u>, <u>e.g.</u>, Requests to Wang Nos. 1-5, 38, 44 (Docket No. 55-3

at 4-6, 19, 22); Requests to C. Chen Nos. 11, 26 (Docket No. 55-4 at 8, 13). Others contain no temporal limitation. See, e.g., Requests Nos. 49-51 to C. Chen (Docket No. 55-4 at 24).[5]

After reviewing the requests, the Court finds that the following requests are overly broad: Requests 1-5, 23, 37-39, 44 to Wang and Requests Nos. 11, 26-27, 49-51 to Chen. To the extent that the Plaintiffs disagree with the Defendants' unilateral narrowing of these requests, they shall confer in good faith with the Defendants to attempt to agree on the appropriate scope of such requests. To the extent they have not done so already, the Defendants are ordered to produce all documents responsive to the remaining requests containing the qualifying language (Requests Nos. 7, 18, 40-43, 52-58 to Wang and Requests Nos. 13, 28-33, 35, 38-48 to C. Chen).[6]

C.   Labeling Documents To Correspond To Categories In The Request

Plaintiffs seek an order compelling the Defendants to identify which documents are responsive to which request. Docket No. 55 at 4. Defendants maintained hard copy business records regarding Enargy Mass, Zoomkoh, and Enargy Shenzhen, which they produced

---

[5] In addition, many of the requests are overly broad because they call for all documents "related to" a topic. "Courts may find requests overly broad when they are 'couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within [their] scope.'" Western Resources, Inc. v. Union Pacific Railroad Co., No. 00-2043-CM, 2002 WL 1822430, at *2 (D. Kan. July 23, 2002) (citation omitted). "Use of broad terms such as 'relate to' or 'relating to' provides no basis upon which an individual or entity can reasonably determine what documents may or may not be responsive." Id.; see also Twigg v. Pilgrim's Pride Corp., No. 3:05-CV-40, 2007 WL 676208, at *9 (N.D. W. Va. Mar. 1, 2007). Nevertheless, the Court finds that reading the requests to seek documents "reflecting" or "concerning" a particular topic is appropriate in this case. Accordingly, to the extent that the Court has ordered the Defendants to produce documents responsive to a request and that request calls for documents "related to" a topic, the Court modifies the requests to strike the language "related to" and replacing it with "concerning."

[6] At oral argument, Defendants' counsel stated that, so far, no documents have been withheld on the basis of privilege. Should the Defendants withhold any documents on the basis of privilege in the future, they shall also produce a privilege log.

electronically in a CD-ROM on June 19, 2014. Docket No. 61 at 4. They maintain that they produced such records "electronically in the order and organization in which those records were kept." Id.[7]

"A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). The producing party can choose whether to produce the documents as they are kept in the usual course of business or label and organize them. Valeo Elec. Sys., Inc. v. Cleveland Die & Mfg Co., No. 08-cv-12486, 2009 WL 1803216, at *2 (E.D. Mich. June 17, 2009). The usual course of business alternative, however, is only available when the documents' natural organization makes finding critical documents reasonably possible. W. Holding Co., Inc. v. Chartis Ins. Co. of Puerto Rico, 293 F.R.D. 68, 71 (D.P.R. 2013) (citations omitted).

The producing party bears the burden of showing that the documents were produced as they were kept in the usual course of business. Valeo Elec. Sys., Inc., 2009 WL 1803216, at *2 (citing Cardenas v. Dorel Juvenile Group, Inc., 230 F.R.D. 611, 618 (D. Kan. 2005)). "A party demonstrates that it has produced documents in the usual course by revealing information about where the documents were maintained, who maintained them, and whether the documents came from one single source or file or multiple sources or files." Id. (citation omitted).

Here, the Defendants have not made a sufficient showing that the documents produced on June 19, 2014 were produced as they were kept in the usual course of business. They have not provided any details regarding where and how the documents were maintained. In addition, it is

---

[7] Defendants represent that they have labeled documents to correspond to categories of requests in their most recent productions, which have not included records kept in the usual course of business. Docket No. 61 at 4.

not clear that the Defendants, as individuals, keep documents in the usual course of business within the meaning of the rule. See Nationwide Mut. Ins. Co. v. Spinal Imaging, Inc., No. 2008-11073-DPW, 2012 WL 73303, at *2 (D. Mass. Jan. 9, 2012) (". . . the option of producing documents 'as they are kept in the usual course of business' under Rule 34 . . . is available to commercial enterprises or entities that function in the manner of commercial enterprises.") (citation omitted).

Moreover, because the documents were originally kept in hard copy but were produced in a CD-ROM, they were not produced as they are kept in the usual course of business. See Anderson Living Trust v. WPX Energy Prod., LLC, 298 F.R.D. 514, 527 (D.N.M. Mar. 6, 2014); Bergersen v. Shelter Mutual Ins. Co., No. 05-1044-JTM-DWB, 2006 WL 334675, at *2 (D. Kan. Feb. 14, 2006). When documents kept as hard-copies are scanned onto a CD for production, "a receiving party may not be able to determine which specific images comprise a single document or attachments to a document since there are no staples which bind together the scanned images as they would hard copies in a file." Bergersen, 2006 WL 334675, at * 2. Accordingly, the Court finds that the Defendants must organize and label the documents produced on June 19, 2014 to correspond to the categories in Plaintiffs' request for production of documents.

    D.    Whether Defendants Must Confirm That There Are No Documents Responsive To A Particular Request

Plaintiffs argue that Rule 34 requires the Defendants to confirm whether there are any responsive documents to every individual request. Docket No. 55 at 6-9. Defendants state that they have searched, and continue to search, for documents responsive to Plaintiffs' document requests but they are not in a position to state definitively that they do not have documents responsive to particular requests. Docket No. 61 at 5.

Defendants need not affirm that their document searches and productions are complete without qualification, or that no additional responsive documents exist. See In re Porsche Cars North Am., Inc., No. 2:11-md-2233, 2012 WL 4361430, at *9 (S.D. Ohio. Sept. 25, 2012). On the other hand, Plaintiffs are entitled to find out whether Defendant have completed their searches, produced all responsive documents, or only produced some documents and withheld others. See Haeger v. Goodyear Tire and Rubber Co., 906 F. Supp. 2d 938, 977 (D. Ariz. 2012). Accordingly, once the Defendants have completed their search and produced all documents they intend to produce, they shall confirm that their efforts in locating responsive documents are complete and whether they are withholding any documents.

E.   Production Of Any Outstanding Documents

Finally, Plaintiffs' counsel refers to several responsive documents that have been identified by the Defendants but not yet produced. Docket No. 55 at 9-10. Defendants state any such documents will be produced "shortly." Docket No. 61 at 5. To the extent that they have not yet been produced, any outstanding documents, including documents to be produced pursuant to this Order, shall be produced within thirty days of the date of this Order.

III.   ORDER

For the foregoing reasons, this Court grants in part and denies in part Plaintiffs' motion to compel. Any documents or other information ordered to be produced shall be produced within thirty days of the date of this Order.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge